IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA RABEL AND ANDREA RABEL,

               Petitioners,

      v.

NEW GLARUS SCHOOL DISTRICT,

               Respondent.

OPINION AND ORDER

21-cv-68-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioners Joshua and Andrea Rabel seek judicial review of an administrative decision of the Wisconsin Division of Hearings and Appeals on behalf of their minor daughter, N.R., under the Individual with Disabilities Education Act (IDEA), 20 U.S.C. §1415(i)(2). Petitioners contend that the administrative law judge (ALJ) erred in denying their claim that respondent failed to provide N.R. a free, appropriate public education (FAPE) in the least restrictive environment by placing N.R. in a specialized school for students with disabilities outside her home school district during the 2020-2021 school year.  Dkt. #1, exh. #2. (Petitioners are not challenging the ALJ's decision regarding their additional claim that respondent improperly shortened N.R.'s hours of instruction and educational services during the 2019-2020 school year.)

Before the court is the petition for review, defendant New Glarus School District's motion for summary judgment and the parties' joint motion for a one-day extension of time within which to file their reply briefs.  Dkt. ##1, 8 and 12.  For the reasons set out below,

1

I am granting the motion for an extension, denying the petition and granting respondent's motion for summary judgment.

From the administrative record (AR) filed by the State of Wisconsin Division of Hearings and Appeals, dkt. #5, I find the following facts to be undisputed unless otherwise noted.  (The AR page numbers cited below are the Bates-stamped numbers that appear at the bottom right corner of each page of the record.)

FACTS

Petitioners Joshua and Andrea Rabel are the parents of N.R., a 14-year old child who was diagnosed with Down syndrome at birth and autism spectrum disorder in July 2019. AR 369.  N.R. is a resident of respondent New Glarus School District and was in the eighth grade during the 2020-2021 school year.  Id.  Since May 2019, her education within the district has been governed by an individualized education plan (IEP) pursuant to the Individuals with Disabilities in Education Act (IDEA).

N.R. has not received regular educational instruction since the 2017-2018 school year, when she was in the fifth grade.  AR 369.  She has spent most of her time in a special education classroom.  During her sixth grade year in 2018-2019, N.R. engaged in aggressive behavior that was physically harmful to others and affected her ability to develop and maintain peer relationships.  Id.  Respondent used several interventions to respond to these behaviors, including seclusion in a small room setting, suspension and restraint.  Id.

In spring 2019, respondent contracted with private educational and behavioral

consultants to conduct a functional behavioral assessment and an independent educational evaluation of N.R.  A functional behavior plan was developed for N.R.  AR 369.  On May 2, 2019, respondent convened an IEP team to review and develop N.R.'s annual IEP and to determine continuing placement.  The IEP meeting included petitioners and the director of Common Threads, a therapeutic private school in McFarland, Wisconsin, that serves as an alternative placement for students struggling in public schools.  AR 370.  Common Threads is approximately a 40 to 45 minute drive from New Glarus.  Id.

At petitioners' request, the IEP team determined that N.R. would receive 90 minutes of special education instruction per day for the remainder of the 2018-19 school year, as well as 15 hours of behavioral consultation at the Common Threads school, educational audiology, transportation, occupational therapy, physical therapy and speech and language therapy.  Id.  The IEP stated specifically that N.R. would not participate with non-disabled peers in the regular education environment, concluding that, given her "anxiety and behaviors, she benefits from extra support, monitoring of behavior and work, and assistance with daily tasks."  AR 370.  The IEP also provided that for the 2019-20 school year, N.R. would attend Common Threads for the same amount of time she had been attending public school at the end of the 2018-19 school year and would build up to a full day.  The IEP team agreed to hold regular meetings to receive progress updates and determine when N.R. would be ready to transition back to respondent's middle school.  Id.

On July 26, 2019, petitioners and respondent engaged in jointly-requested mediation with the Wisconsin Special Education Mediation System.  AR 370.  Both parties were

represented by counsel and executed a written mediation agreement that N.R. would begin attending school at Common Threads on September 9, 2019 for 90 minutes a day and that IEP team meetings would be held to discuss increasing the length of N.R.'s daily education. Id.  On September 5, 2019, the IEP team revised the plan to provide for 180 minutes of daily special education services for N.R. at Common Threads.  AR 371.

In her first month at Common Threads, N.R. made slow progress integrating into programming with peers and often refused to go where she needed to be.  AR 371.  From September 24 to October 1l, 2019, N.R. followed her schedule half of the time and did not change independently between activities.  Id.  She needed the support of two staff members at all times.  Id.  However, on December 18, 2019, Common Threads staff observed a significant change in N.R.'s progress.  AR 372.  She began engaging with people and in activities and was able to answer questions.  Id.  At a meeting on February 3, 2020, the IEP team increased N.R.'s instructional time to 240  minutes per day.  Id.

On February 18, 2020, the IEP team held a meeting to address petitioners' request that N.R. transition out of Common Threads and begin receiving all her services from the Center for Behavioral Intervention (CBI), which provides behavioral therapy and intervention but not educational instruction.  AR 372.  The IEP team agreed to add 120 minutes a day (10 hours a week) of in-home behavioral therapy services from CBI to N.R.'s IEP, in addition to the 240 minutes per day of instruction she was receiving from Common Threads.  Id.  At the next IEP team meeting on March 3, 2020, the IEP team increased N.R.'s educational instruction at Common Threads to 300 minutes a day and continued the

120 minutes of daily behavioral therapy from CBI, which amounted to a full school day of programming.  Id.

When Wisconsin schools closed in mid-March 2020 as a result of the COVID-19 pandemic, Common Threads and respondent switched to online, virtual educational instruction.  On April 2, 2020, petitioners informed respondent that they did not intend to have N.R. receive the full 300 minutes per day of online instruction from Common Threads for the remainder of the school year.  AR 372-73.  During IEP meetings held in April 2020, the IEP team developed N.R.'s IEP for the 2020-21 school year, which included N.R.'s continued placement at Commons Threads for 300 minutes a day of special education and 10 hours of behavioral therapy a week from CBI.  AR 373.  Subsequently, respondent notified all of its students that they had the option of attending school virtually or in person for the 2020-21 school year.  Id.

At an August 25, 2020 IEP team meeting, petitioners stated that they did not want N.R. to continue to receive special education instruction from Common Threads and instead wanted N.R. to attend respondent's middle school virtually and receive continued behavioral therapy from CBI.  AR 373.  Respondent's IEP team members opposed the request because they believed that Common Threads's online instruction was more appropriate than respondent's online instruction to meet N.R.'s needs.  Id.  The IEP team decided to provide N.R. a full school day of services comprised of three hours of virtual instruction from Common Threads and six hours of behavioral therapy provided by CBI (three hours were to overlap with Common Threads instruction).  AR 373.

On September 1, 2020, petitioners filed a request with the Wisconsin Department of Public Instruction for a due process hearing to address the shortening of N.R.'s school day during the 2019-20 school year and her placement at Common Threads during the 2020-21 school year.  AR 373-74.  Following a hearing held on October 29 and 30, 2020, the ALJ hearing the case ruled in favor of respondent on both issues in a written decision issued on December 22, 2020.  AR 372.  On January 29, 2021, petitioners filed a petition in this court for review of the decision to place N.R. at Common Threads for the 2020-21 school year.

OPINION

A.  <u>Standard of Review</u>

In reviewing the decision of an ALJ following an IDEA due process hearing, the court must:  (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of a party; and (3) base its decision on the preponderance of the evidence, granting such relief as it determines is appropriate.  20 U.S.C. § 1415(i)(2)(C).  The standard of review under which this court considers petitioners' challenge differs from that governing the typical review of summary judgment.  <u>M.B. ex rel. Berns v. Hamilton Southeastern Schools</u>, 668 F.3d 851, 859 (7th Cir. 2011) ("[O]ur standard of review in IDEA summary judgment cases differs from the norm."); <u>Heather S. v. State of Wisconsin</u>, 125 F.3d 1045, 1052 (7th Cir. 1997).  When neither party has requested that the court hear additional evidence, as is the situation in this case, a "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the

administrative record." Heather S., 125 F.3d at 1052 (quoting Hunger v. Leininger, 15 F.3d 664, 669 (7th Cir.1994)). See also Beth B. v. Van Clay, 282 F.3d 493, 496 n.2 (7th Cir. 2002) ("[S]ummary judgment may be appropriate even when facts are in dispute, and is based upon a preponderance of the evidence."). As the parties challenging the outcome of the state administrative decision, petitioners bear the burden of proof. Heather S., 125 F.3d at 1052; Board of Education of Community Consolidated School District 21 v. Illinois State Board of Education, 938 F.2d 712, 716 (7th Cir. 1991).

Relying on a decision from the Court of Appeals for the Ninth Circuit, petitioners contend that the standard of review is "ultimately a *de novo* one following due consideration of the findings of the state hearing officer." Dkt. #11 at 5 (citing Ashland School District v. Parents of Student R.J., 588 F.3d 1004, 1008-1009 (9th Cir. 2009)). However, the Court of Appeals for the Seventh Circuit has held that in reviewing an administrative decision under the IDEA, a district court reviews legal issues *de novo*, M.B., 668 F.3d at 860, but gives "due weight" to the results of the administrative proceedings and does not "substitute [its] own notions of sound educational policy for those of the school authorities." Heather S., 125 F.3d at 1053 (internal citations omitted). See also Patricia P. v. Board of Education of Oak Park, 203 F.3d 462, 466 (7th Cir. 2000) ("[C]ourts do not have special expertise in the area of educational policy, they must give 'due weight' to the results of the administrative decisions."). "In other words, [a court must] provide 'the usual deference that reviewing courts owe agencies when judicial review is limited to the administrative record.'" M.B., 668 F.3d at 860 (internal citations omitted). The court of appeals in this circuit has made clear

that "[t]his level of review is akin to the standards of clear error or substantial evidence." Alex R. v. Forrestville Valley Community Unit School District No. 221, 375 F.3d 603, 611-12 (7th Cir. 2004).  See also Heather S., 125 F.3d at 1053 ("[I]n the absence of any mistake of law, we may only reverse the district court if its findings were clearly erroneous.") (internal citations omitted).


### B.  Petitioners' Challenge

Petitioners contend that respondent's placement of N.R. at Common Threads during the 2020-21 school year denied her the IDEA's guarantee of a "free appropriate public education" (FAPE) in the "least restrictive environment."  20 U.S.C. §§ 1412(a)(1) and (5). Specifically, they contend that by providing N.R. three hours of virtual special education instruction from Common Threads and six hours of in-home behavioral therapy from CBI (three hours of which overlapped with the Common Threads instruction), respondent excluded N.R. from the regular education environment available in her home district for students without disabilities.

The IDEA provides that

> To the maximum extent possible, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).  See also Casey K. ex rel. Norman K. v. St. Anne Community High School District No. 302, 400 F.3d 508, 512 (7th Cir. 2005) (internal citations

omitted) ("Placing a child in a school for disabled children runs counter to the policy of the IDEA of 'mainstreaming' disabled children to the 'maximum extent appropriate.'").  Federal regulations implementing the statute further require that:  (1) the educational placement of a child with a disability be as close as possible to the child's home; (2) "the child is educated in the school that he or she would attend if nondisabled," unless the child's educational program "requires some other arrangement"; (3) "consideration is given to any potential harmful effect on the child or on the quality of services that he or she needs"; and (4) the child "is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum."  34 C.F.R. §§ 300.116(b)(3) and (c)-(e).

Petitioners contend that the ALJ applied the wrong legal standard, improperly asking whether N.R.'s placement in virtual learning for the 2020-21 school year in the segregated environment at Common Threads adequately addressed her needs rather than asking whether segregation was necessary in the first place.  However, the ALJ cited the correct legal standards regarding FAPE and least restrictive environment and recognized that mainstreaming is required to the maximum extent appropriate.  AR 376.  Although the ALJ acknowledged that N.R.'s August 2020 IEP did not place her in the school district closest to her home and did not provide her the virtual instruction available in a regular education classroom, she noted correctly that the IDEA's mandate for the least restrictive environment is not absolute.  AR 377.  As the ALJ held, a child with a disability may be removed from the regular classroom when she is unable to receive a satisfactory education in the mainstream.

9

AR 376 (citing Board of Education of Township High School District No. 211 v. Ross, 486 F.3d 267 (7th Cir. 2007); Beth B., 282 F.3d 493).

The Court of Appeals for the Seventh Circuit "has declined to adopt any sort of multi-factor test for assessing whether a child may remain in a regular school," but it has held that "it is not enough to show that a student is obtaining some benefit, no matter how minimal, at the mainstream school." Ross, 486 F.3d at 277 (citing Beth B., 282 F.3d at 499). Rather, "[t]he relevant inquiry relevant is whether the student's education in the mainstream environment was 'satisfactory' or could be made satisfactory through reasonable measures." D.W. ex rel. Williams v. Milwaukee Public Sch., 526 Fed. Appx. 672, 676 (7th Cir. 2013) (citing Ross, 486 F.3d at 277).

Contrary to petitioners' contention, the ALJ did not misconstrue the legal standard and made the correct inquiry. She concluded that petitioners' argument was a mechanical approach to the least restrictive environment requirement and failed to acknowledge that N.R. could not be educated satisfactorily in respondent's middle school during the 2020-21 school year. In support of her decision, the ALJ cited evidence in the record showing that N.R. struggled during her sixth and seventh grade years (2018-2020) and had not been able to remain in a classroom with her non-disabled peers since the fifth grade. Because of N.R.'s anxiety, behaviors and need for extra support and monitoring, N.R.'s IEP team, including petitioners, agreed in May 2019 that N.R. would not participate with non-disabled peers in the regular education environment for the remainder of the 2018-19 school year or the 2019-20 school and would attend Common Threads for a shortened school day with a plan

to increase her instructional minutes as she progressed.

Following a difficult few months, N.R. began making progress at Common Threads in mid-December 2019. By March 2020, the IEP team had increased N.R.'s instructional minutes to a full school day. However, when the school switched to virtual learning in March 2020, petitioners chose not to have N.R. participate fully in the virtual curriculum at Common Threads. When the IEP team met in August 2020 to discuss N.R.'s placement for the 2020-21 school year, petitioners did not want N.R. to continue to receive special education instruction from Common Threads and instead wanted N.R. to attend respondent's middle school virtually and receive continued behavioral therapy from CBI. (At petitioners' request, the IEP team did not consider an in-person learning option for N.R.) The ALJ found from N.R.'s August 2020 IEP and the testimony of several IEP team members that respondent did not believe that placement in the general education environment was appropriate to meet N.R.'s needs for the 2020-21 school year because respondent's virtual program was primarily asynchronous or recorded, meaning that students did not receive live virtual instruction in real time. AR 377 (citing AR 220, 223, 230, 232, 976). On the other hand, the virtual instruction provided by Common Threads provided N.R. with synchronous or live instruction in a small group setting with other students who had disabilities. Id.

The ALJ cited what she found to be the credible testimony of Christine Douty, respondent's middle and high school special education teacher and N.R.'s case manager. Douty testified that N.R.'s needs could not be met through respondent's virtual learning

because its pre-recorded videos could not provide N.R. with the consistency, predictability, interaction and feedback that N.R. required.  AR 218, 220, 377.  (Although petitioners point out that respondent offered some types of synchronous instruction to mainstream and special needs students, AR 79-80, 217, 221, it is not clear from the record or the parties' briefs that any of these offerings would have met N.R.'s specific needs.)

As the ALJ also noted, Douty testified that N.R.'s need for peer interaction drove her IEP, and respondent did not have a peer group for N.R. in its virtual program, whereas Common Threads had a virtual peer program that met N.R.'s needs.  AR 223.  The ALJ pointed out that other members of respondent's staff had explained that there were no other middle school students with disabilities with whom N.R. could receive virtual instruction because all students with 50 to 100 percent placement in special education had chosen in-person learning for the 2020-21 school year, and respondent could not require or change those students' in-person program to include virtual learning with N.R.  AR 377 (citing AR 227-28).

Finally, petitioners contend that respondent refused to even consider ways in which it could modify its virtual instruction model or provide accommodations or support to N.R. so that she could participate in the virtual version of respondent's regular academic programming.  However, the scant evidence that petitioners cite in support of their contention is insufficient to show that respondent could have offered N.R. a satisfactory virtual education in a mainstream environment using reasonable measures.

Petitioners point out that Brenda Vicen, the director of school services at Common

Threads, testified that respondent never asked her whether the services and supports offered at Common Threads could be incorporated in respondent's virtual instruction, even though such services are widely-available.  AR 191, 202.  They also contend that Jennifer Krantz, respondent's director of special education and curriculum, admitted that it was possible to "incorporat[e] N.R.'s needs into services available" through respondent but "summarily dismissed the possibility because Common Threads offered a comprehensive program." Dkt. 11 at 10.  Petitioners mischaracterize the testimony of both Vicen and Krantz.  Their testimony did not show that respondent refused to consider measures that would make it possible for N.R. to interact with non-disabled peers.  Vicen said only that respondent did not ask her about modifications to its virtual instruction; she did not say that she had approached respondent about the issue or that respondent had refused to consider available options.  Although Krantz testified that it was technologically possible to include N.R. virtually in the classroom, she also made clear that such a measure was not appropriate because it would not meet N.R.'s specific needs.  AR 230.  Krantz explained that even if N.R. participated virtually in the special education classroom, the students in that classroom were not receiving group instruction or the same instruction content.  Id. at 231.

Considering the evidence of record, the ALJ reached a rational conclusion that respondent had met its obligations to provide N.R. a free appropriate education in the least restrictive environment that she could handle.  Ross, 486 F.3d at 278 (finding same with respect to student's placement in special education setting rather than local public high school).  As the ALJ explained, N.R. had not interacted with non-disabled students for more

13

than two years, and petitioners failed to cite any evidence in the record showing that N.R. was ready to interact with her non-disabled peers in a virtual or in-person setting or that placement in a regular education setting was appropriate to meet N.R.'s needs.  AR 377-78. Although petitioners disagree with the ALJ's conclusion, it is not the court's role to independently assess N.R.'s case.  Id. ("We can only decide whether the hearing officer and the district court came to a rational conclusion, and we find that they did.").

Because petitioners have failed to show that the ALJ committed clear error in deciding that respondent's placement of N.R. at Common Threads for the 2020-21 school year provided her a free appropriate education in the least restrictive environment, the ALJ's decision will be affirmed.


ORDER

IT IS ORDERED that:

1.  The the parties' joint motion for a one-day extension of time within which to file their reply briefs, dkt. #12, is GRANTED.

2.  Respondent New Glarus School District's motion for summary judgment, dkt. #8, is GRANTED.

3.  The December 22, 2020 decision of the Wisconsin Division of Hearings and Appeals is AFFIRMED.

4.  The clerk of court is directed to enter judgment in favor of respondent and close this case.

Entered this 22nd day of July, 2021.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge